THE INTERSTATE NATIONAL BANK v. J. W. FERGUSON,
as *Treasurer of Kansas City.*

1. MONEYS, *When City Funds.* Moneys paid to the city treasurer under
the provisions of § 189 of the first-class-city act are city funds; or,
in other words, funds belonging to the city.

2. ———— *Designation of Depository.* And for the purpose of desig-
nating a bank as a depository for them, they are under the control
of the mayor and council; but, when they are deposited in the bank
designated by the mayor and council, they are still subject to the
order of the board of police commissioners to the same extent as
they were when they were held by the city treasurer.

3. ———— *Valid Statute.* Section 87 of the first-class-city act, which
provides for the mayor and council designating a bank as a deposi-
tory for the public money of the city, is not unconstitutional or void.

4. ———— *Interest on Deposits.* A national bank may be a depository
for such funds, and may lawfully agree to pay interest on the de-
posits and to give a bond for their security.

*Original Proceeding in Mandamus.*

THE opinion herein, filed June 11, 1892, contains a suffi-
cient statement of the case.

*Pratt, Ferry & Hagerman,* for relator.

*Hutchings, Keplinger & Miller,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of *mandamus* brought
originally in this court by the Interstate National Bank of
Kansas City, Kas., against J. W. Ferguson, the treasurer of
such city, to compel him to deposit with the plaintiff all pub-
lic moneys coming into his hands as city treasurer, including
all moneys received by him under the provisions of § 189 of
the first-class-city act. Sections 87 and 189 of the first-class-
city act read as follows:

"SEC. 87. The city treasurer shall give such bond to the
city as may be required by the mayor and council, said bond
to be approved by the mayor and filed with the city clerk. It
shall be the duty of the city treasurer, if so required by ordi-

nance, to deposit daily all public money in some responsible bank, to be designated by the mayor and council, in the name of such such treasurer, as such officer, which bank shall pay interest on monthly average balances as may be agreed upon by such bank and the mayor and council. And before making such deposits, the said council shall take from such bank a good and sufficient bond, in a sum to be designated by the council, conditioned that such deposit shall be promptly paid on the check or draft of said treasurer; and in the monthly report of said treasurer, he shall state the amount deposited and drawn out of such bank during the previous month; and no funds shall be paid by said treasurer, except by check or draft on such bank; and all checks and drafts drawn by said treasurer on said bank shall be countersigned by the city clerk, who shall keep an accurate record of each check or draft so countersigned by him. And it shall further be the duty of the city treasurer, in his monthly report to the council, to make an itemized statement of the various sums received and paid out by him during the preceding month, from whom received and on what account; and said treasurer shall keep a separate account of each fund received by him, and shall credit each account with the funds received therefor, and charge each account with the amounts legally drawn thereon or paid out therefrom; and no money shall be paid out of one fund which belongs to another. All money paid to the city for licenses, taxes, or for any other purpose whatever, shall be paid to the city treasurer, who shall issue duplicate receipts therefor. One of said receipts shall be filed with the city clerk, who shall enter and charge to the treasurer the same in a book kept for this purpose; and the city clerk shall not issue any license until there is first filed with him a receipt of the city treasurer, showing the full amount of said license has been paid."

"SEC. 189. All fines or forfeitures collected by the police judge upon charges for the violation of the laws of the state shall be by him paid into the county treasury of the county in which said city is located, for the use of the common school fund of such county. All fines and forfeitures collected upon charges for a violation of city ordinances, and all fees of officers collected by the police judge under any act of the legislature or city ordinance for services, shall be paid to the city treasurer, to be held by him subject to the order of the board of police commissioners for the payment of the salaries of all officers under this law, and the expenses of the police department. And the mayor and council are required to set apart

and pay monthly out of the general fund of the city such sum as may be necessary to pay the balance due for such salaries and expenses, after deducting the amount of such fines so paid to said treasurer. After the payment of the salaries of all officers under this law, and expenses of the police department, if there should be a surplus in the hands of the city treasurer, derived from fines and forfeitures collected by the police judge for a violation of city ordinances, such surplus shall be paid over to the general revenue fund of said city."

On December 26, 1891, a city ordinance of the mayor and council of said city took effect, sections 1 and 2 of which read as follows:

"SECTION 1. That the Interstate National Bank, of the city of Kansas City, be and the same is hereby designated as city depository for all funds of the city.

"SEC. 2. That the city treasurer is hereby directed to keep on deposit all of the city's funds in the bank designated in section 1 of this ordinance until otherwise ordered."

It is alleged by the plaintiff, among other things, as follows:

"That on December 9, 1891, the council of said city took from said Interstate National Bank a good and sufficient bond in the sum of $200,000, which sum was designated by said council, conditioned as provided by said section 641 of said statutes (said section 87); and it was agreed by and between the said bank and the mayor and council of said city that the said bank should pay interest on monthly average balances of such deposits at the rate of 2 per cent. per annum."

The plaintiff has complied with all the terms and conditions required of it under the statutes and the city ordinances and its contract with the city, to authorize it to receive the aforesaid moneys, provided a national bank may ever, under any circumstances, receive such moneys; but the defendant, as city treasurer, refuses to deposit with the plaintiff any such moneys; and the plaintiff, for the purpose of compelling the defendant to make such deposits, has brought this present action in this court. The defendant has demurred to the plaintiff's petition and alternative writ upon various grounds, some of which are wholly untenable and require no comment; but

others demand our careful consideration. Among the points made by the defendant are the following: (1) It is claimed by the defendant that the aforesaid ordinance provides for depositing only the "funds of the city" or the "city's funds" with the plaintiff, which funds, it is claimed, do not include any of the funds mentioned in § 189 of the first-class-city act. (2) It is also claimed by the defendant that the mayor and council have no control, under §§ 87 and 189 of the first-class-city act, or under any other statute or statutes, over any funds paid to the city treasurer under the provisions of said § 189, for the purpose of placing them in a bank or for any other purpose, for the following reasons: First, they are not city funds; second, they are "to be held by" the city treasurer and not by a bank; and, third, they are "subject to the order of the board of police commissioners," and not to the order of the mayor and council. (3) It is also claimed by the defendant that § 87 of the first-class-city act, so far as it provides for the depositing of any of the public money in any bank, is unconstitutional and void, being in contravention of § 4, article 11, of the state constitution; and also in contravention of the general spirit and essence of such constitution. (4) It is further claimed by the defendant that the plaintiff, which is a national bank, has no power to receive any public moneys belonging to a city or to any other public organization under any such terms or conditions as are, in the present case, imposed upon the bank by the statutes of Kansas, the city ordinances, and the contract between the bank and the city, for the reason that such a thing would be in contravention of the purposes for which national banks were created, and *ultra vires*.

We must decide all these points against the defendant and in favor of the plaintiff. The first and second may be considered together. The funds mentioned in § 189 of the first-class-city act, and payable to the city treasurer, are, as we think, "city funds," and that for the purpose of creating a depository for them the mayor and council have absolute authority over them. But it is said that,

1. Moneys, when city funds.

when they are paid to the city treasurer, they are "to be held by him subject to the order of the board of police commissioners for the payment of the salaries of all officers under this law and the expenses of the police department." Of course these funds are to be held by the city treasurer subject to the order of the board of police commissioners for a particular purpose, but they are to be held by the city treasurer and subject to the order of the police commissioners only in the manner as may be provided by said § 189 and the other statutes of the state. This section of the statute must be construed in connection with all the other statutes of the state which may be *in pari materia*, and especially in connection with said § 87 of the first-class-city act. The statutes might direct that the city treasurer should place the funds in a certain vault under his control, and if he should so place them, they would undoubtedly "be held by him." And we would also think that when he deposits them in a bank to be drawn out on his own checks or drafts whenever he may choose, and only on his checks or drafts, the funds are still, in contemplation of the statutes, "held by him," although they may also be held by a bank.

Money deposited in a bank is usually considered *as money* belonging to the depositor, and under the revenue laws of this state it is taxed *as money*. And this interpretation of said § 189 does not deprive the board of police commissioners from

2. Designation of depository. having all the control over the funds which the statutes give them. They can have just as much control over the funds after they are deposited in the bank as while they are "*held*" by the city treasurer. For instance, if it should become necessary at any time for the board to use any of these funds for the purpose of paying the salaries of officers or the expenses of the police department, the board might draw its order upon the city treasurer for the amount, and when such order should be presented to the city treasurer, he would draw his check or draft on the bank designated by the mayor and council for the amount and in favor of the person designated by the board of police commissioners, which

check or draft when presented to the bank would be promptly paid. These funds mentioned in said § 189, which may be deposited in a bank under said § 87, are "all fines and forfeitures collected upon charges for a violation of city ordinances, and all fees of officers collected by the police judge under any act of the legislature or city ordinance for services;" and under the statutes these funds are all to be "paid to the city treasurer," which clearly indicates that they all must be city funds. Some of these funds do not arise at all from the management of the police department, and all are placed within the custody of the city treasurer as city treasurer.

The city treasurer, as all know, acts in a dual capacity: (1) As the city treasurer proper; and (2) as *ex officio* treasurer of the board of education; and he receives public funds separately in each of these capacities. He also gives two bonds, and only two bonds, one as the city treasurer, under § 87 of the act relating to cities of the first class, as required by the mayor and council and approved by the mayor and filed with the city clerk; and the other under chapter 178 of the Laws of 1885, which relates to schools, (Gen. Stat. of 1889, ¶ 5693,) and this bond he gives as the treasurer of the board of education, as required and approved by such board, and filed with the clerk of the board of education. The first of these two bonds is to secure the safety of all the *city funds* which might come into his hands as city treasurer; and the other is to secure the safety of all the *school funds* which might come into his hands as treasurer of the school board; and no bond is given by him in any other capacity or to secure the safety of any other fund. Under said § 87 of the first-class-city act, the mayor and council designate the depository for the city funds, while under said chapter 178 of the Laws of 1885 the board of education designates the bank which shall be the depository for the funds belonging to the board of education; and the power of the board of education in the one case is almost exactly similar to the power of the mayor and council in the other. Now, the funds mentioned in § 189 of the first-class-city act, those which the plaintiff

47 — 48 KAS.

desires to have deposited in its bank, are not school funds belonging to the board of education, and they did not come into the defendant's hands as treasurer of the board of education, but they came into his hands only as the city treasurer; hence, they. are not covered by the bond given by him as treasurer of the board of education; and if they are not "city funds," then they are not covered by any bond, and no bond has been given for their security or safety. Such a state of things should not be held to exist. On the contrary, we think it should be held that these funds are city funds belonging to the city and covered by the bond given by the city treasurer under § 87 of the first-class-city act. In our opinion, all the funds mentioned in § 189 of the first-class-city act and paid to the city treasurer are *city·funds*, and are "public money," within the meaning of § 87 of the first-class-city act, and are under the control of the mayor and council at least so far as the designation of some bank as a depository for them is concerned.

It is further claimed that said § 87, so far as it authorizes the mayor and council to designate a bank as a depository for the city funds is concerned, is unconstitutional and void. Now the city treasurer is not a constitutional officer. The constitution does not mention any such officer, nor state where or with whom city funds shall be kept; hence it would seem that the legislature would have full and ample authority with respect to this subject. Neither are the funds which are required to be paid to the city treasurer under § 189 of the first-class-city act taxes within the provisions of § 4, article 11, of the constitution, as the defendant's counsel seem to urge. They are not taxes at all, and we cannot say that the statute is in contravention of any spirit supposed to be contained in or to pervade the constitution.

3. Valid statute.

We think the plaintiff in the present case, although a national bank, has the power to accept and receive all the funds which its contract with the city authorizes it to accept or receive, and under the terms and conditions imposed upon it by the statutes, by the city ordinances and by its contract. Un-

der the authority of the United States Revised Statutes, § 5136, it has the power, under subdivision third, "to make contracts," and under subdivision seventh, "to exercise . . . all such incidental powers as shall be necessary to carry on the business of banking." And a bank may certainly, as a part of its legitimate banking business, receive deposits, pay interest thereon, secure its depositors by bond or any other lawful means, and loan the money which it receives as general deposits; and it makes no difference that the depositor may be a city, where the law permits the city to make general deposits with a bank and to receive interest on its deposits. As to the powers of banks in general, see 1 Morse on Banks and Banking, §§ 47, 48, 63, and 309.

**4. Interest on deposits.**

The defendant's demurrer will be overruled, and as he asks for leave to make return to the alternative writ, he will be permitted to make such return within — days from this time.

All the Justices concurring.