[No. 3602.    May 20, 1931.]

MELAVEN v. HUNKER et al.

[299 Pac. 1075.]

Hunker & Noble, of Las Vegas, for appellants.

Charles W. G. Ward, of Las Vegas, for appellee.

OPINION OF THE COURT

HUDSPETH, J.

The appellee was appointed receiver of the insolvent People's Bank & Trust Company in the year 1925.   He brought this suit against the appellants and sought to recover certain bills receivable pledged by said bank to appellants, sureties on a depository bond for $12,000, given to secure deposits of public funds of Mora county.   At a time when there was no money of Mora county on deposit in said bank appellants learned that the treasurer of Mora county intended to deposit $8,000.   The bank was notified by appellants that, unless they were indemnified, they would withdraw as sureties and notify the treasurer and board of finance of Mora county not to make said deposit. The bank agreed that, if appellants would not take the threatened action, the bank would indemnify them, and pursuant to a resolution of the board of directors the assets of said bank involved in this suit were indorsed and delivered to appellant Hunker, as trustee for all the sureties, to be held by him to indemnify and save harmles the sureties.   Thereafter the $8,000 of Mora county

funds were deposited and remained on deposit in the People's Bank & Trust Company until it closed its doors and ceased to do business.

The trial court made findings of fact based on a stipulation, including findings that appellants were accommodation sureties, and that the directors and officers of said People's Bank & Trust Company believed they were acting within their powers and for the best interest of the said bank in pledging the assets involved in this suit to appellants. As a conclusion of law the court stated that the pledging of the assets to indemnify the sureties was an ultra vires act on the part of said bank and its directors. Judgment was rendered for the appellee, and appellants appeal.

■■ Counsel for appellee, in his able brief, states:

"The sole point in the case is: May the pledging of assets to secure a general deposit, whether made for the protection of bondsmen, so they will not withdraw, and a deposit be thus secured, or the pledging of assets to secure bondsmen be sustained as the exercise of an incidental power necessary to carry on the business of banking?"

In its narrowest terms, the question is whether a state bank can pledge its assets to sureties on a depository bond in order that a deposit of public funds may be secured.

Appellee cites, among other cases, to sustain his position that the action of the board of directors in assigning assets to indemnify the sureties on the bond was an ultra vires act, Commercial Bank. & Trust Co. v. Citizens' Trust & Guaranty Co., 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; and Divide County v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296.

Appellee maintains that there is a material difference between a loan and a deposit; that, while our statute authorizes a bank to borrow money and pledge its assets as collateral security for its payment, yet there is no authority, express or implied, for it to secure deposits by the pledge of assets (except the deposit of the securities listed in the statute, the pledging of which in lieu of a depository bond is explicitly authorized), either directly

to the depositor or to sureties on a depository bond, to indemnify such sureties.

Appellants contend that, unless the statute forbids it, a bank is authorized to pledge its assets to secure deposits of public funds; that the statutes of New Mexico discriminate in favor of public deposits and expressly authorize the pledging of certain assets directly to secure the deposit of public funds; that the limitation on the class of security which can be pledged directly with a public official is for the protection of the public monies only; that, even though the bank was not authorized to pledge the assets involved in this suit, it could not demand and recover back the securities pledged without returning the funds or deposits received by it as a consequence of making such pledge, and that the receiver stands in the shoes of the bank in winding up its affairs. Appellants cite: Mothersead v. U. S. F. & G. Co. (C. C. A.) 22 F. (2d) 644; Ward v. Johnson, 95 Ill. 215; Ahl v. Rhoads, 84 Pa. 319; First Natl. Bank v. Natl. Exchange Bank, 92 U. S. 122, 23 L. Ed. 679; Natl. Bank of Commerce v. Natl. Bank of Mo., Fed. Cas. No. 18,310; McFerson v. National Surety Co., 72 Colo. 482, 212 P. 489; Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795; Andrew v. Odebolt Savings Bank, 203 Iowa, 1335, 214 N. W. 559; U. S. F. & G. Co. v. Bassfield, 148 Miss. 109, 114 So. 26; Board of County Com'rs. v. People's Bank & Trust Co., 34 N. M. 166, 279 P. 60; Richards v. Osceola Bank, 79 Iowa, 707, 45 N. W. 294; Pixton v. Perry, 72 Utah, 129, 269 P. 144; Cameron v. Christy, 286 Pa. 405, 133 A. 551; Ainsworth v. Kruger, 80 Mont. 468, 260 P. 1055; Morse on Banking (6th Ed.) § 63.

There are marked differences in the statutes of the several states. The New Mexico Bank Act, Laws 1915, c. 67, was taken from the statutes of Colorado, in which state it is held that a bank may pledge its assets to secure deposits. McFerson v. National Surety Co., supra.

Laws 1915, c. 67, § 55, 1929 Comp., § 13-156, reads as follows:

"Except as herein limited, incorporated banks shall exercise and enjoy all the rights and privileges and be subject to all the liabilities and restrictions provided by law for corporations in general."

Our general corporation laws were taken from New Jersey. State v. Bank of Magdalena, 33 N. M. 473, 270 P. 881. The courts of New Jersey have construed this act and held that the plea of ultra vires is inadmissible by a corporation where the other party has fully performed and cannot be restored to his former status nor be honestly dealt with otherwise than by holding the corporation to the performance of its share of the bargain. Camden & Atlantic Railroad Co. v. May's Landing & Egg Harbor Railroad Co., 48 N. J. Law (19 Vroom) 530, 7 A. 523; Chapman v. Iron Clad Rheostat Co., 62 N. J. Law, 497, 41 A. 690.

"The doctrine of that case is applicable only to ultra vires contracts in the proper sense of the term; that is to say, contracts that are beyond the statutory powers of the corporation. It is not applicable to contracts expressly prohibited by statute and contrary to the public policy of the Legislature."

Strickland v. National Salt Co., 79 N. J. Eq. 182, 81 A. 828, 832.

We held in the case of Griffith v. Tierney, 34 N. M. 387, 281 P. 461, 462:

"The receiver of an insolvent state bank occupies no better position than the bank itself, and takes its assets subject to all equities which existed at the time of his appointment."

The pledging of assets to secure a public deposit is not prohibited by statute in this state and is not contrary to the legislatively declared policy. On the contrary, it has long been the public policy in this state to discriminate in favor of public funds. The law requires security in some form before the public officials are authorized to deposit public monies in a bank. Our Public Monies Act, Laws 1923, c. 76, and the amendatory act; Laws 1925, c. 123, both expressly authorize the pledging of bonds of a specified class in lieu of surety bonds in order to secure public deposits. The Legislature in specifying the class of securities did not intend thereby to place a limitation on the power of banks in the use of their assets to secure de-

posit of public money, but specified certain gilt-edged bonds, which, in the opinion of the Legislature, would secure the deposit as well as a surety bond.

It matters not to the general depositor whether the discrimination is effected by the pledging of gilt-edged securities of the bank to the depositor of public funds, or the pledging of bills receivable bearing a higher rate of interest to sureties on a depository bond by which such public funds are secured. The right of the bank to sell the bills receivable and purchase bonds of the specified class and use the bonds so acquired to secure the public deposit is not questioned. The vice—if vice there be—lies in permitting the pledging of assets of any class to secure public deposits. Appellee strongly urges the application of the doctrine that "equality is equity." This doctrine was considered by us in its application to the right of set off in State v. Bank of Magdalena, supra, where we held that the indemnitor of a surety in a depository bond to secure the public funds of Socorro county, having paid the depositor after the insolvency of the bank, might set off his claim against his indebtedness to the bank on promissory notes.

Appellee argues, in effect, that if the bank assets, which may be pledged to secure public deposits, are limited to the gilt-edged securities listed in the law, it will tend to prevent banks continuing in business after their capital has become impaired. The Legislature has adopted other remedies to prevent this evil practice. The law requires periodical examinations of banks and authorizes and makes it the duty of the bank examiner to act immediately whenever the capital of a bank shall be impaired or when the bank is not conducted in conformity with the statutes. If this official will discharge his duty without fear or favor and administer the penalties prescribed by law, instead of a slap on the wrist, it will be rare indeed that a depositor will suffer loss.

The People's Bank & Trust Company secured the benefits of the deposit of the Mora county funds, which were made as a result of the execution of the bond by the appellants, and the appellee cannot be heard to say that the

pledging of the assets of the bank to secure appellants was an ultra vires act. We hold that a solvent bank has a right to pledge its securities to indemnify a surety who signs a bond in its behalf in order that the bank may obtain a deposit of public funds.

It follows from the foregoing that the court below was in error and the case must be reversed and remanded to the trial court, with directions to render judgment in favor of the appellants; and it is so ordered.

PARKER and SADLER, JJ., concur.

BICKLEY, C. J., and WATSON, J., did not participate.